## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| BBK TOBACCO & FOODS, LLP, D.B.A. HBI INTERNATIONAL,<br><br>Plaintiff,<br>v.<br><br>MARK GIANGIULI; EBAY SELLER JILLYCUT aka JILLYCUT'S JUNK; DAWN GIANGIULI, jointly and severally,<br>Defendants. | CIVIL ACTION NO. _____<br><br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

BBK Tobacco & Foods, LLP, d.b.a. HBI International ("HBI") ("Plaintiff"), by and through its undersigned attorneys, brings this civil action against Defendants Mark Giangiuli, eBay Seller Jillycut, a.k.a. Jillycut's Junk, and Dawn Giangiuli (together, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.      This is an anti-counterfeiting action against those who make, import, buy, distribute and/or sell counterfeit versions of RAW® Rolling Papers (including RAW® Organic Hemp King Size Slim Rolling Papers).

2.      Plaintiff is the exclusive U.S. distributor of all high-quality authentic RAW® Rolling Papers, and owns the registered and common-law trademarks, and common-law trade dresses that appear on all authentic RAW® Rolling Papers

1

authorized for sale in the United States.

3.      Plaintiff is also the owner of multiple federally registered copyrights, for original works appearing on and in connection with their RAW® Rolling Papers authorized for sale in the United States.

4.      Defendants are acquiring, buying, re-selling, and otherwise distributing counterfeit RAW® Rolling Papers in counterfeit packaging bearing counterfeit RAW® Trademarks, RAW® Copyrights, and the RAW® Trade Dress.

5.      Counterfeit RAW® Rolling Papers mimic authentic products, but are cheaper in price and poor-quality imitations.

6.      Defendants bought and sold to Plaintiffs' agents at least 6 boxes of counterfeit RAW® Rolling Papers, including 2 boxes and 24 individual booklets of the RAW® Organic King Size Slim Rolling Paper, 1 box of RAW® Classic King Size Slim Rolling Paper, 2 boxes of RAW® Organic 1 ¼ Size Rolling Paper, and 1 box of RAW® Classic 1 ¼ Size Rolling Paper varieties.

7.      HBI cannot verify the conditions under which Defendants' counterfeit goods are manufactured, stored, and sold, meaning HBI has lost the power to control the quality and relative safety of products sold under its brands, causing irreparable harm.

8.      Defendants' counterfeiting is willful – that is, with knowledge of the products' counterfeit status as Defendants have been alerted by HBI multiple times

concerning the counterfeit nature of the Counterfeit Products but continue to sell the Counterfeit Products.

9.     As a result of Defendants' counterfeiting, HBI has irretrievably lost the ability to control the quality of products sold under its trademark, other source identifiers, and RAW® brand.

10.     HBI brings this lawsuit for (a) trademark infringement, in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114); (b) trademark infringement, false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); (c) unfair competition in violation of Michigan common law; (d) unfair competition in violation of MCL § 445.903; and (e) copyright infringement, in violation of the Copyright Act of 1796 (17 U.S.C. §§ 101 *et seq.*).

## THE PARTIES

### Plaintiff

11.     HBI is an Arizona limited liability partnership with an address at 3401 West Papago Street, Phoenix, Arizona 85009. HBI does business as HBI International.

12.     HBI owns and exclusively distributes RAW® Rolling Papers; is the owner of the RAW® Trademarks and RAW® Trade Dress; has exclusively and continuously used the distinctive, non-functional RAW® Trade Dress on and in

connection with authentic RAW® Rolling Papers; and has the right to sue civilly to protect its rights.

### Defendants

13.   eBay Seller Jillycut ("Jillycut") is a Georgia company with an address and principal place of business at 146 Brookhaven Ln., McDonough, Georgia 30253.

14.   Jillycut is involved in the intentional purchase, sale, and/or other distribution of counterfeit RAW® Rolling Papers in the Eastern District of Michigan and nationwide.

15.   Mark Giangiuli ("Giangiuli") is a Georgia citizen residing at 146 Brookhaven Ln., McDonough, Georgia 30253.

16.   Giangiuli owns and operates Jillycut.

17.   Giangiuli is involved in the willful purchase, sale, and other distribution of counterfeit RAW® Rolling Papers in the Eastern District of Michigan and nationwide.

18.   Giangiuli uses Jillycut as an instrument for his own counterfeiting/infringement, as described below.

19.   Dawn Giangiuli ("Ms. Giangiuli") is a Georgia citizen residing at 146 Brookhaven Ln., McDonough, Georgia 30253. Ms. Giangiuli owns and operates Jillycut.

20.     Ms. Giangiuli is involved in the willful purchase, sale, and other distribution of counterfeit RAW® Rolling Papers in the Eastern District of Michigan and nationwide.

21.     Ms. Giangiuli uses Jillycut as an instrument for her own counterfeiting and infringement, as described below.

22.     At all relevant times, Defendants acted in concert and participation with one another to own and operate businesses, intentionally buying, selling, and/or otherwise distributing counterfeit RAW® Rolling Papers in the Eastern District of Michigan and nationwide.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over HBI's Lanham Act and claims under 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338.

24.     Personal jurisdiction is proper in this judicial district because each Defendant has had substantial contacts within the State of Michigan, including doing business in Michigan and directing sales in the State of Michigan.

25.     Additionally, Defendants sold counterfeit RAW® Rolling Paper in Michigan.

26.     Defendants' sale of counterfeit RAW® Rolling Papers in the Eastern District of Michigan is in violation of Michigan consumers' rights and knowingly causes injury and harm to consumers and HBI in Michigan.

5

27.     Venue is proper in the Eastern District of Michigan under 28 U.S.C. § 1391(b) because a substantial portion of the events and/or omissions giving rise to HBI's claims occurred here, namely, Defendants' intentional purchases, sales, and/or other distributions of counterfeit RAW® Rolling Papers.

## FACTS COMMON TO ALL CLAIMS

### RAW® Smoking Papers/Cigarette Paper Products

28.     HBI designs, manufactures, imports, markets and sells "RAW" brand smoking products and accessories, including RAW® Rolling Papers, which are used by consumers who prefer to "roll their own" cigarettes.

29.     HBI's authentic RAW® Rolling Papers are exclusively manufactured and imported from Alcoy, Spain, after which HBI subjects them to strict and exacting quality control standards.

30.     HBI has been manufacturing, selling, marketing, promoting and distributing high-quality authentic RAW® Rolling Papers for over a decade.

31.     HBI's RAW® Rolling Papers come in several varieties which differ in thickness, composition of paper, size and the like.

32.     One variety of RAW® rolling paper is the RAW® 1 ¼ Rolling Papers, with 50 paper leaves per pack and 24 packs per box ("RAW® 1 ¼").

33.     RAW® 1 ¼ comes in different styles including classic ("RAW® Classic 1 ¼") and organic ("RAW® Organic 1 ¼").

6

34.     Another variety of RAW® rolling paper is the popular RAW® King Size Slim Rolling Papers, with 32 paper leaves per pack and 50 packs per box ("RAW® KSS").

35.     RAW® KSS comes in three different styles: classic ("RAW® Classic KSS"), organic ("RAW® Organic KSS"), and " RAW Black".

36.     If authentic RAW® Rolling Papers meet with HBI's high standards, then HBI distributes them to wholesale stores and retailers throughout the United States. The retail stores, in turn, sell RAW® Rolling Papers to consumers.

37.     Because of HBI's investments in manufacturing, sales, marketing, and promotion, and its tremendous sales history, the RAW® rolling papers, RAW® brand and RAW® Trademarks (defined below) have become famous.

38.     HBI has built a strong social media presence and following on websites such as Twitter (http://twitter.com/rawlife247) (over 31,000 followers) (as of July 16, 2020); Instagram (http://www.instagram.com/rawlife247/) (over 2 million followers) (same); Facebook (http://www.facebook.com/RawRollingPaper) (over 400,000 followers) (same); and Youtube (http://www.youtube.com/user/RawPapersOfficial) (over 160,000 subscribers) (same).

39.     These websites feature handles and the use of hashtags such as #rawlife and #rawlife247.

40.     These websites also underscore the characteristics and features of HBI's RAW® products that distinguish them from the competition.

41.     HBI operates a website at www.rawthentic.com, which is used to advertise RAW® rolling papers and promote the RAW® lifestyle/brand.

42.     HBI also markets and sells merchandise, like apparel, featuring the stylized RAW logo and borrowing design elements from RAW® rolling paper product packaging.

43.     There have been many popular culture references to RAW® Rolling Papers, including by pop-culture celebrities and musicians who consume the products.

<h3 style="text-align:center"><u>RAW® Trademarks</u></h3>

44.     The following registered "RAW® Trademarks" appear on the Principal Register in the United States Patent and Trademark Office ("USPTO"), and appear alone or in combination on all authentic RAW® rolling papers distributed by HBI:

    a. U.S. Registration No. 2989221 for RAW (word mark);

<p style="text-align:center; font-size:2em">RAW</p>

    b. U.S. Registration No. 4412202 for RAW (word mark);

<p style="text-align:center; font-size:2em">RAW</p>

c.  U.S. Registration No. 4325822 for RAW ARTESANO (word mark);

# RAW ARTESANO

d.  U.S. Registration No. 4647824 for RAW ORGANIC HEMP

AUTHENTIC PUREST NATURAL HEMP FIBERS UNREFINED

RAY NATURAL UNREFINED HEMP ROLLING PAPERS (design

mark);



(true and accurate copies of the records from the USPTO denoting the current

status of the federal trademark registrations for the RAW® Trademarks are

annexed hereto as Exhibit A).

45.     The RAW® Trademarks have been continuously and exclusively used

by HBI on, and in connection with, superior quality rolling paper products and

smoking accessories.

46.     Because of HBI's sales history, and other factors, HBI has developed

substantial goodwill and a reputation among U.S. consumers as the exclusive

original source of all high-quality RAW® rolling papers and smoking accessories

in the United States, and HBI has become known, nationwide, as the exclusive and only source of authentic RAW® rolling papers.

47. HBI's product packaging is distinctive and legally protected.

48. As illustrated in <u>Exhibit B</u>, the packaging for authentic RAW® Rolling Papers and similar products, features design elements such as:

a. use of the colors red, brown, and tan;

b. one or more of the RAW® Trademarks;

c. the term "RAW," depicted in large, red, stylized font, set at an angle in the center of the packaging design and having a piece of twine wrapped about the same;

d. to the right of the term "RAW," a description of the rolling paper size, depicted in brown font/coloring;

e. to the left of the term "RAW," a brown-tone circular element with a lighter colored center, containing the terms "AUTHENTIC" and "UNREFINED" in tan font within the brown-tone outer ring, and either the term "PUREST NATURAL FIBERS" (on the Classic variety) or the term "PUREST NATURAL HEMP FIBERS" (on the Organic variety) in brown font within the ring's center;

f. above the term "RAW," either the term "CLASSIC" or "ORGANIC HEMP" inside a brown rectangle that exposes the underlying tan color

10

for the letters;

g. below the term "RAW," the term "NATURAL UNREFINED ROLLING PAPERS" (on the Classic variety) or the term "NATURAL UNREFINED HEMP ROLLING PAPERS" (on the Organic variety) in brown font;

h. overlaying the aforementioned design elements, a raster image (i.e., photograph) of twine in brown and tan coloring, crossing the packaging vertically and horizontally, with a knot in the center of the packaging design; and,

i. inside the packs ( RAW® 1 ¼ and RAW® KSS Rolling Papers):

   i. the trademark/slogan "THE NATURAL WAY TO ROLL";

   ii. the hashtag "#RAWLIFE";

   iii. the website address "WWW.RAWTHENTIC.COM"; and,

   iv. The wording "NATURAL GUM PLEASE MOISTEN GENTLY" in light tan font, set at an angle within a darker tan banner. (All of the foregoing design elements (a)-(i), together with the overall look-and-feel of the packaging, are referred to herein as the "Unregistered RAW® Trade Dress"); *see also* Exhibit B (8 ½" x 11" photographs of the Unregistered RAW® Trade Dress, Classic and Organic versions on packaging for

RAW® KSS and RAW® 1 ¼ Rolling Papers):










**Pack (top and front view)** (RAW® Trademarks and Unregistered RAW® Trade

Dress depicted on RAW® KSS and RAW® 1 ¼ Rolling Papers)







**Pack (inside view)** (RAW® Trademarks and Unregistered RAW® Trade Dress

depicted on RAW® KSS and RAW® 1 ¼ Rolling Papers)



**Box (front and top view)** (RAW® Trademarks and Unregistered RAW®

Trade Dress depicted on RAW® KSS and RAW® 1 ¼ Rolling Papers Packaging)

49.     At all relevant times, HBI has used the Unregistered RAW® Trade

Dress for rolling paper products in commerce in the United States.

50.     The elements featured in the RAW® Trade Dress are arbitrary, non-

functional, and distinctive, as is the overall look-and-feel of the packaging.

51.     HBI also owns the following Principal Register registration, Reg. No.

13

3422929, for "Cigarette rolling papers":



52.    HBI also owns U.S. Registration No. 4647824 registered for

"Cigarette paper; Cigarette papers; Cigarette rolling papers; all of the foregoing

made from natural, organic hemp":



53.    The foregoing U.S. Registration Nos. 3422929 and 4647824 (together,

the "Registered RAW® Trade Dress") are distinctive overall, and consist of design

elements that are each arbitrary, non-functional, and distinctive.  *See* <u>Exhibit C</u>

(true and correct copies of USPTO records denoting registration of the foregoing

trademarks/trade dresses).

54.    The Unregistered RAW® Trade Dress and Registered RAW® Trade

Dress (together "RAW® Trade Dress") are consulted when designing RAW-brand

products other than rolling papers, such as cigar and cigarette rolling trays, giving

those products an equally distinctive look and feel, and making the connection with

14

the RAW brand and HBI clear to consumers.

55.     The RAW® Trade Dress and constituent design elements have been extensively and continuously used by HBI; have been and are used nationwide on products; are inherently distinctive and instantly recognizable to consumers as source identifiers; and have become even more distinctive through the acquisition of secondary meaning from HBI's long-standing, nationwide use of them in connection with Rolling Papers of superior quality.

56.     Upon information and belief, U.S. consumers who see the RAW® Trade Dress immediately associate it with HBI as a source identifier and do not associate it with any other source.

## RAW® Copyrights

57.     HBI also owns federal copyright registrations for visual works appearing in connection with its RAW® Rolling Papers.

58.     One of the federal copyright registrations that HBI owns is registration number VA001961856 entitled "RAW Organic Hemp 1 and ¼ Individual Package". The copyrighted work is depicted below:





59.     Additionally, HBI also owns federal copyright registration number

VA001962325 entitled "24 Box". The copyrighted work is depicted below:



(together, registration numbers VA001961856, and VA001962325, the "RAW©

Copyrights").

60.    Currently, and at all relevant times, HBI has been the sole owner of all rights, title, and interest in and to the RAW® Copyrights.

61.    The RAW® Copyrights appear on authentic RAW® Rolling Papers distributed by HBI in the United States.

## Defendants' Willful Counterfeiting And Infringement Of HBI's RAW® Rolling Papers

62.    Defendants are engaged in an unlawful scheme of acquiring and selling, or otherwise distributing counterfeit RAW® Rolling Papers, including RAW® Organic KSS, RAW® Organic 1 1/4, RAW® Classic KSS, and RAW® Classic 1 ¼  (the "Counterfeit Products").

63.    Defendants distribute look-alike RAW® Rolling Papers in counterfeit packaging containing counterfeit versions of the RAW® Trademarks, RAW® Copyrights, and RAW® Trade Dress, creating the false commercial impression that the counterfeit products are HBI's authentic RAW® products, when they are not.

64.    Defendants' Counterfeit Products do not originate with HBI; are not made with HBI's permission, or under any license(s) from HBI; and are not made with any authority to use HBI's respective trademarks, copyrights, or trade dresses (*i.e.*, the RAW® Trademarks, RAW® Copyrights, RAW® Trade Dress).

65.    Defendants' Counterfeit Products differ from HBI's authentic RAW® Rolling Papers in material ways, including and without limitation:

18

 a. Inferior-quality printing, paper, and packaging; and,

 b. Inconsistent burn patterns and rates, which potentially ruin

  consumers' smoking experiences.

66. HBI's authentic RAW® Rolling Papers are subject to strict and exacting quality control standards, and are stored and sold under known and verifiable conditions.

67. By contrast, Defendants' Counterfeit Products are not subject to any known quality control standards, and HBI cannot tell what conditions the Counterfeit Products have been subjected to.

68. Thus, HBI cannot vouch for the quality or ingredients used to manufacture Counterfeit Products, and consumers likewise cannot verify that the particular products they purchase meet with their high expectations for HBI's authentic RAW® Rolling Papers.

69. The packaging for HBI's RAW® Rolling Papers states where the products are manufactured in Alcoy, Spain.

70. Defendants' Counterfeit Products mimic the appearance of HBI's authentic RAW® Rolling Papers, and thus the counterfeit packaging also states the respective counterfeit products are made in Alcoy, Spain. Upon information and belief, Defendants' Counterfeit Products are manufactured in Asia, China or India, outside of HBI's care, control, and authorized manufacturing and distribution

channels.

71.    Upon information and belief, Defendants' misconduct in engaging in this counterfeiting is willful.

### HBI's Investigation and Defendants' Known Counterfeit Sales

72.    HBI has investigated counterfeit RAW® sales in Michigan via the internet through e-commerce websites in particular.

73.    HBI identified Defendants as sellers of counterfeit RAW® Rolling Papers on e-commerce platform eBay.com.

74.    Defendants have also sold other counterfeit products to Michigan consumers in this judicial district. *See N. Atlantic Operating Company, Inc., et al. v. Hot Box Deals, et al.*, 2:18-cv-10134-LVP-MKM (E.D. Mich. 2020) [Dkt. 141] (issuing permanent injunction against Defendants prohibiting sale of counterfeit goods).

75.    HBI's investigators made several purchases of counterfeit HBI RAW® products from Defendants on eBay.com.

76.    On April 11, 2019, HBI's investigator visited Defendants' Jillycut e-commerce storefront on eBay and purchased one (1) box of purported RAW® Organic KSS for $29.99 per box ("April 2019 Controlled Buy").

77.    HBI later inspected the April 2019 Controlled Buy and determined the box and its contents were counterfeit.

78.     On November 11, 2019, HBI's investigator visited Defendants' Jillycut e-commerce eBay storefront and purchased: (1) one box of purported RAW® Organic 1 ¼ for $21.95; and, (2) one box of purported RAW® Classic KSS for $29.99 ("November 2019 Controlled Buy").

79.     HBI later inspected the November 2019 Controlled Buy products and determined the boxes and their contents were counterfeit.

80.     On March 24, 2020, HBI's investigator visited Defendants' Jillycut storefront and purchased: (1) one box of purported RAW® Classic 1 1/4; (2) one box of purported RAW® Organic 1 ¼; and, (3) one box of purported RAW® Organic KSS for the total price of $96.62 ("March 2020 Controlled Buy").

81.     HBI later inspected the March 2020 Controlled Buy items and determined that the boxes and their contents were counterfeit.

82.     On April 2, 2020, HBI's investigator again visited Defendants' Jillycut storefront and purchased 24 booklets of purported RAW® Organic KSS for $30.68 (roughly $1.28/booklet) ("April 2020 Controlled Buy").

83.     HBI later inspected the April 2020 Controlled Buy and determined the booklets and their contents were counterfeit.

84.     HBI confirmed Defendants bought and sold, and are buying and selling, Counterfeit Products and boxes of counterfeit RAW® Rolling Papers.

## **Defendants' Counterfeiting Is Intentional and Willful**

85.     The buys from the undercover agent represent a small fraction of the sales of Counterfeit Products by Defendants that HBI knows about.

86.     HBI's investigators are not Defendants' only customers of Counterfeit Products.

87.     Defendants have sold Counterfeit Products to customers other than the undercover agent during the Controlled Buys.

88.     Extrapolating from the Controlled Buys, HBI believes Defendants' counterfeiting of RAW® Rolling Papers is on a much larger scale.

89.     Defendants are professional sellers of products including Rolling Papers as they have alleged to have bought the products wholesale.

90.     At all relevant times, Defendants knew HBI was the exclusive source and distributor of RAW® Rolling Papers in the United States.

91.     On multiple occasions Defendants were made aware of the possibility that they were selling counterfeit RAW® products on the eBay.com platform.

92.     On or about November 1, 2019, HBI through its counsel submitted a complaint to eBay through the "VeRO" program concerning some of Defendants' eBay.com listings for purported counterfeit RAW® products.

93.     Defendants' listings depicted tell-tale indicators of counterfeit products, including but not limited to, packaging differences. True and correct

photographs of Defendants' eBay listings taken on or about October 25, 2019 that

displayed tell-tale counterfeit signs are depicted below, and are attached hereto in

Exhibit D.





94.     The following day, Defendants contacted counsel for HBI via email concerning the November 2019 VeRO program complaint, alleging, among other things, that HBI "run[s] [its] business like a bunch of thugs . . . ."

95.     On or about March 16, 2020, HBI again, through its counsel, submitted a complaint through the eBay VeRO program concerning some of Defendants' eBay.com listings for purported counterfeit RAW® products.

96.     Defendants' listings depict tell-tale indicators of counterfeit products, including but not limited to, packaging differences. A true and correct photograph of Defendants' eBay listing taken on or about March 11, 2020 that displayed tell-tale counterfeit signs is depicted below, and is attached hereto in Exhibit E.



97.    The same day, after submitting the March 2020 VeRO program complaint, Defendants contacted HBI's counsel via email. Among other things, Defendants stated "Hey asshole if you would like the invoice from my supplier I can provide that."

98.    In response to Defendants' March 16, 2020 email, HBI, through counsel, requested Defendants provide HBI copies of their invoices for the purported RAW® products.

99.    On March 18, 2020, Defendants then responded to HBI's counsel: "I'll be launching a lawsuit for taking my listings down," among other allegations. Defendants never provided invoices for the RAW® products like HBI requested.

25

100.   On March 24, 2020, Defendants sent an additional email to HBI's counsel, alleging among threats of legal action, that "[t]he only way you're going to see receipts is when we're standing in front of a judge together since the way you work is backwards." The email also alleged that Defendants had an attorney, stating "[m]y lawyer has informed me this is a slam dunk case as you have no recourse for what you did is completely illegal", but, to date, HBI's counsel was never, and has never been contacted by any attorney purporting represent the Defendants.

101.   On March 24, 2020, Defendants then sent an email to HBI's counsel Venable LLP at a general law firm email complaining about one of HBI's individual Venable LLP attorneys concerning the eBay takedowns, again threatening a lawsuit.

102.   On or about July 9, 2020, HBI again through its counsel submitted a complaint through the eBay VeRO program concerning some of Defendants' eBay.com listings for purported counterfeit RAW® products.

103.   In response, Defendants have sent HBI's counsel multiple harassing emails and have left multiple harassing voicemails on counsel's firm, and personal phones, in less then a 24 hour period between July 14th and July 15th, 2020.

104.   On July 14th, 2020, via email, HBI's counsel again asked Defendants to provide copies of the receipts/invoices for the products at issue.

26

105.   In response, Defendants provided screenshots of products that appear to be in website shopping carts, but failed to indicate if the products were actually purchased; by whom they were purchased; and when they were purchased. True and correct copies of the images sent by Defendants to HBI's counsel purporting to be receipts are attached hereto as <u>Exhibit F</u>.

106.   Defendants have not sent any other documentation for their purchases to HBI other than the screenshots depicted in <u>Exhibit F</u>.

107.   By definition, Defendants did not obtain the Counterfeit Products from HBI or any other authorized source.

108.   Upon information and belief, Defendants recognized that the counterfeit products did not originate with HBI.

109.   Upon information and belief, Defendants recognized the tell-tale counterfeit indicators on the Counterfeit Products they bought, sold, or otherwise distributed (*e.g.*, color/saturation differences, and packaging quality differences).

110.   Upon information and belief, Defendants are acting in concert to buy, sell, and otherwise distribute Counterfeit Products, and upon information and belief, other counterfeit RAW® Rolling Papers.

111.   Defendants' purchase, sale, and other distribution of Counterfeit Products is with subjective knowledge of HBI's respective rights in and to the RAW® Rolling Papers; of the Counterfeit Products' counterfeit status; and of the

damage and harm caused by Counterfeit Products to HBI and in the marketplace.

## Damages and Irreparable Harm to HBI

112.   As alleged above, Defendants' Counterfeit Products have distinct quality differences from HBI's authentic RAW® Rolling Papers, namely, they are low quality and are not subjected to any known quality control standards.

113.   When consumers purchase Defendants' Counterfeit Products, they are less likely to think favorably of HBI than they would if they had purchased HBI's authentic RAW® Rolling Papers.

114.   When a consumer has a negative smoking experience with Counterfeit Products, and wrongfully attributes defects in Counterfeit Products to HBI, the consumer may decide not to use HBI's authentic RAW® Rolling Papers in the future and may switch to another Rolling Paper brand. If that happens, it may never be possible for HBI to regain the consumers' lost trust.

115.   Defendants' purchase, sale, and other distribution of Counterfeit Products thus deprives HBI of its absolute right to control the quality and relative safety of the products that appear to be sold under its RAW® brands, and the RAW® Trademarks, RAW® Copyrights, and RAW® Trade Dress.

116.   As a direct/proximate result of the foregoing, HBI has suffered, and unless Defendants' conduct is enjoined by this Court, will continue to suffer, actual economic damages in the form of lost sales, revenues, and profits, and irreparable

harm to HBI's RAW® brand value, reputation, and goodwill, for which HBI has no adequate legal remedy.

## FIRST CLAIM FOR RELIEF

## FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

117.   HBI realleges and incorporates by reference each of the above paragraphs as though fully set forth herein.

118.   In violation of 15 U.S.C. § 1114, Defendants, independently and in conspiracy with one another, used in commerce, without HBI's consent, either a reproduction, counterfeit, copy, or colorable imitation of one or more of the registered RAW® Trademarks, on and in connection with the sale, offering for sale, distribution, or advertising of counterfeit RAW® Rolling Papers, including but not limited to counterfeit RAW® Organic KSS, RAW® Classic KSS, RAW® Organic 1 1/4, and RAW® Classic 1 ¼, which is likely to cause confusion, or to cause mistake, or to deceive consumers.

119.   Defendants' actions, constitute willful infringement of HBI's exclusive rights in and to the RAW® Trademarks, which are registered on the Principal Register, and which HBI respectively owns/has the exclusive right to use/enforce for Rolling Papers in the United States.

120.   As a direct and proximate result of Defendants' willful misconduct, HBI has suffered economic damages and irreparable harm to the value and

29

goodwill associated with the registered RAW® Trademarks, and irreparable harm to HBI's reputation in the industry.  Unless Defendants are restrained and enjoined from buying, selling, or otherwise distributing Counterfeit Products, or counterfeiting or infringing the RAW® Trademarks, HBI will continue to be economically damaged and irreparably harmed.

121.   As a direct and proximate result of Defendants' willful misconduct, Defendants have earned illicit profits, and HBI has suffered lost profits from lost sales, in amounts not yet known but to be determined at trial.

122.   HBI has no remedy at law that could compensate it for the continued, irreparable harm caused by Defendants' purchase, sale, and other distribution of Counterfeit Products, and counterfeiting and infringement of the RAW® Trademarks. Accordingly, HBI seeks, and is entitled to, preliminary and permanent injunctive relief.

123.   HBI is also entitled to statutory damages, enhanced damages, and/or reasonable attorneys' fees, in amounts not yet known, but to be determined at trial.

## SECOND CLAIM FOR RELIEF

## FALSE DESIGNATION OF ORIGIN AND TRADEMARK/TRADE DRESS INFRINGEMENT (15 U.S.C. § 1125(a))

124.   HBI realleges and incorporates by reference each of the above paragraphs as though fully set forth herein.

125.   In violation of 15 U.S.C. § 1125(a), Defendants, independently and in

conspiracy with one another, and in connection with their purchase, sale, and other distribution of Counterfeit Products, used in commerce a slogan, trade dress, word, term, name, symbol, or device, or a combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which was and is likely to cause confusion or to cause mistake, or to deceive consumers as to an affiliation, connection, or association with HBI.

126. Without limitation, Defendants willfully sold Counterfeit Products bearing counterfeit and infringing versions of the RAW® Trademarks and RAW® Trade Dress, and infringed HBI's nationwide common-law rights therein. Defendants also falsely designated the Counterfeit Products as originating/being distributed by HBI, when they are not, and by definition, could never be, because any Rolling Papers distributed by HBI could not be counterfeit. Defendants also sold Counterfeit Products in counterfeit packaging that falsely states where the Counterfeit Products are made: Alcoy, Spain.

127. As a direct and proximate result of Defendants' willful misconduct, HBI has suffered, and is suffering, economic damages and irreparable harm to the value and goodwill associated with their common-law trademarks and trade dresses, including the RAW® Trademarks, RAW® Trade Dress, and associated reputations, brand values, and goodwill.

128. Unless Defendants are restrained and enjoined from further

31

infringement of the RAW® Trademarks and RAW® Trade Dress, and from falsely designating the Counterfeit Products' origin as Alcoy, Spain, with HBI, HBI will continue to be economically damaged and irreparably harmed.

129.   HBI has no adequate remedy at law that could compensate it for the continued and irreparable harm it has suffered, and will continue to suffer, if Defendants' purchase, sale, and other distribution of Counterfeit Products is allowed to continue.  Thus, HBI seeks, and is entitled to, preliminary and permanent injunctive relief.

130.   As a direct and proximate result of Defendants' willful misconduct, Defendants have earned illicit profits, and HBI has suffered lost profits from lost sales, in amounts not yet known but to be determined at trial.

131.   HBI is entitled to damages, trebled damages, and/or reasonable attorneys' fees, in amounts not yet known, but to be determined at trial.

### THIRD CLAIM FOR RELIEF

### UNFAIR COMPETITION – MICHIGAN COMMON LAW

132.   HBI realleges and incorporates by reference each of the above paragraphs as though fully set forth herein.

133.   In violation of the common law of the State of Michigan and elsewhere, Defendants have unfairly competed with HBI by manufacturing, selling, offering for sale, and/or distributing counterfeit RAW® rolling papers and

therefore appropriating a distinctive portion of the RAW® Trademarks and RAW® Trade Dress.

134.   Defendants' willful misconduct caused confusion and uncertainty in HBI's business by deceiving and misleading the public, who with such reasonable case and observation as the public generally are capable of using and may be expected to exercise, is likely to mistake Defendants' counterfeit products with those sold by HBI.

135.   As a direct and proximate result of Defendants' willful misconduct, HBI has suffered irreparable harm to the value and goodwill associated with the RAW® Trademarks and RAW® Trade Dress and their reputation in the industry.

136.   Unless Defendants are restrained from further infringement of the RAW® Trademarks and RAW® Trade Dress, HBI will continue to be irreparably harmed.

137.   HBI has absolutely no adequate remedy at law that will compensate for the continued, irreparable harm that it will suffer if Defendants' willful misconduct is allowed to continue.

138.   As a direct and proximate result of Defendants' willful misconduct, HBI has suffered damages to the valuable RAW® Trademarks and RAW® Trade Dress and other damages.

## FOURTH CLAIM FOR RELIEF

## MICHIGAN STATE LAW UNFAIR COMPETITION (MCL § 445.903)

139.   HBI repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

140.   Defendants used in commerce, without HBI's consent, either a reproduction, counterfeit, copy, or colorable imitation of the RAW® Trademarks and RAW® Trade Dress in connection with the sale, offering for sale, or advertising of the Counterfeit Products, which is likely to cause confusion, or to cause mistake, or to deceive.

141.   Defendants used in commerce a slogan, trade dress, word, term, name, symbol, or device, or any combination thereof, or a false designation of origin, false or misleading representation of fact, which was or is likely to cause confusion or to cause mistake, or to deceive as to an affiliation, connection, or association with HBI.

142.   Defendants' actions constitute unfair, unconscionable, or deceptive methods, acts or practices in conduct of trade or commerce and interfere with HBI's exclusive rights in and to the RAW® Trademarks and the RAW® Trade Dress.

143.   HBI has suffered irreparable harm to the value and goodwill associate with the RAW® Trademarks and the RAW® Trade Dress and their reputation in the industry.

34

144.    Unless Defendants are restrained from further unfair, unconscionable, or deceptive methods, acts or practices in conduct of trade or commerce that interferes with HBI's exclusive rights to the RAW® Trademarks and the RAW® Trade Dress, HBI will continue to be irreparably harmed.

145.    HBI has no adequate remedy at law that will compensate for the continued, irreparable harm that it will suffer if Defendants' willful misconduct is allowed to continue.

146.    HBI has suffered damages to the valuable RAW® Trademarks and the RAW® Trade Dress and other damages in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

## COPYRIGHT INFRINGEMENT

147.    HBI repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

148.    Currently, and at all relevant times, HBI has been the sole owner of all rights, title, and interest in and to the RAW® Copyrights.

149.    HBI has the exclusive right to, among other things, reproduce, distribute, publicly display, and create derivative works from the RAW® Copyrights, which it solely owns.

150.   HBI registered its claims to the RAW® Copyrights with the United States Copyright Office. To wit, HBI possesses copyright registration certificates for the RAW® Copyrights.

151.   The Defendants have directly infringed the RAW® Copyrights by unlawfully reproducing, transmitting, distributing, publicly displaying, or creating derivative works based on the RAW® Copyrights, in violation of HBI's exclusive rights under 17 U.S.C. § 106.

152.   The foregoing actions of the Defendants in violation of HBI's rights have been willful and intentional, executed with full knowledge of HBI's exclusive rights in the RAW® Copyrights and in conscious disregard of those rights.

153.   HBI is entitled to recover from the Defendants the profits that the Defendants obtained through infringements of the RAW® Copyrights, as well as HBI's damages from those infringements, or, at HBI's election, statutory damages pursuant to 17 U.S.C. § 504.

154.   HBI is also entitled to recover costs and attorneys' fees from the Defendants pursuant to 17 U.S.C. § 505.

155.   The Defendants' willful infringement of HBI's RAW® Copyrights have caused, and unless restrained and enjoined by this Court, will continue to cause, irreparable injury to HBI, which is not fully compensable in monetary damages. HBI

is therefore entitled to preliminary and permanent injunctions prohibiting the Defendants from further infringing HBI's RAW® Copyrights.

## PRAYER FOR RELIEF

WHEREFORE, HBI demands judgment against Defendants as follows:

1.     For judgment for HBI that:

    a.  All Defendants have violated Section 32 of the Lanham Act, 15 U.S.C. § 1114;

    b.  All Defendants have violated Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) (unfair competition, false designation of origin, common-law trademark and trade dress infringement);

    c.  All Defendants have violated the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq*;

    d.  Defendants have unfairly competed with HBI in violation of Michigan state and common law; and,

    e.  In all instances, Defendants acted in bad faith, willfully, intentionally, and/or in malicious disregard of HBI's lawfully protected rights.

2.     For an order preliminarily and permanently enjoining Defendants, their agents, their servants, their employees, and their officers, and all those acting in concert or participation with them, who receive actual notice by personal service or otherwise, pending the final hearing and determination of this action, from

directly or indirectly, anywhere in the world:

    a.  Manufacturing, making, buying, purchasing, importing, shipping, delivering, advertising, marketing, promoting, offering to sell, selling, or otherwise distributing or disposing of, in any manner, any counterfeit or infringing RAW-brand products, including but not limited to RAW® Organic KSS, RAW® Classic KSS, RAW® Organic 1 1/4, and RAW® Classic 1 ¼, or any rolling papers, rolling trays, or other smoking products or accessories bearing:

        i.  Infringing or counterfeit versions of the RAW® Trademarks, RAW® Copyrights, or the RAW® Trade Dress, which devices appear alone or in combination on authentic packs and boxes of RAW® rolling papers, including RAW® Organic KSS, RAW® Classic KSS, RAW® Organic 1 1/4, and RAW® Classic 1 ¼, distributed by HBI in the United States; or

       ii.  The false representation that such products are distributed by HBI or otherwise under HBI's control or supervision, or are "Made in Alcoy, Spain," when they are not;

    b.  Manufacturing, making, buying, purchasing, importing, shipping, delivering, advertising, marketing, promoting, offering to sell, selling, or otherwise distributing or disposing of, in any manner, any

purported HBI or RAW-brand products that are not actually produced, imported, or distributed under HBI's control or supervision, or approved for sale in the United States by HBI in connection with the RAW® Trademarks, RAW® Copyrights, or RAW® Trade Dress;

c. Committing acts calculated to cause purchasers to believe that counterfeit or infringing RAW-brand products originate with HBI when they do not;

d. In any way infringing or damaging the RAW® Trademarks, RAW® Copyrights, and/or RAW® Trade Dress, or the value or goodwill associated therewith;

e. Attempting, causing, or assisting in any of the above-described acts, including but not limited to enabling others in the above-described acts, or passing on information to others to allow them to do so; and

f. Forming or causing to be formed any corporation or other entity that engages in the above-described acts.

3. For an order requiring Defendants to cooperate with HBI in good faith in its investigation of counterfeit sales at their retail and/or wholesale establishments, including, without limitation by:

a. Permitting HBI's representatives or its designees to conduct inspections of Defendants' inventories of purported RAW-brand

products to determine if any such products are counterfeit or otherwise infringing, and permitting HBI's representatives to obtain and retain possession of any such counterfeit products;

b.  Responding to reasonable requests for information about Defendants' source(s) of RAW-brand products; and

c.  Cooperating with HBI's representatives or its designees in its investigations of any source(s) of counterfeit RAW-brand products.

4.  For an order enjoining Defendants from engaging in harassing conduct, including engaging in unsolicited telephone calls and emails, towards HBI, and HBI's counsel, and other agents.

5.  For an order:

a.  Requiring Defendants to account for and pay over to HBI all profits derived from their wrongful misconduct to the full extent provided for by Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a);

b.  Requiring Defendants to account for and pay to HBI enhanced damages resulting from their wrongful misconduct to the full extent provided for by Section 35(b) of the Lanham Act, 15 U.S.C. § 1117(b);

c.  Awarding HBI damages, or statutory damages in an amount not less than $2 million ($2,000,000) per trademark pursuant to Section 35(c)

of the Lanham Act, 15 U.S.C. § 1117(c), or in the alternative
$200,000 per trademark pursuant to 15 U.S.C. § 1117(c)(1);

d.   Awarding any and all other damages permitted by the Lanham Act,
including compensation for damage to the value of HBI's trademarks
and trade dress, their reputation among U.S. consumers, their
goodwill, and other damages in an amount not yet known, but to be
proved at trial;

e.   Requiring the Defendants to account for and pay all profits derived
from their wrongdoing misconduct to HBI, to the full extent provided
for by the Copyright Act, 17 U.S.C. § 504;

f.   Awarding damages to HBI, or statutory damages in an amount not
less then $150,000 per infringement of the RAW® Copyrights, which
occurred after the filing of their copyright applications against each of
the Defendants separately and jointly;

g.   Awarding HBI its costs of suit, including reasonable attorneys' fees
and investigation costs; and

h.   Awarding such other and further relief as this Court deems just and
proper.

## <u>DEMAND FOR JURY TRIAL</u>

HBI hereby demands a trial by jury on all claims and issues so triable.

Dated: August 14, 2020                    Respectfully submitted,

                                          BBK TOBACCO & FOODS, LLP, D.B.A.,
                                          HBI INTERNATIONAL


                                          By:/*s/Lyndsay S. Ott*_____
                                          WARNER NORCROSS + JUDD LLP
                                          Lyndsay S. Ott (P72949)
                                          lott@wnj.com
                                          45000 River Ridge Drive, Suite 300
                                          Clinton Twp., MI 48038
                                          Phone: 248-784-5080


OF COUNSEL:
VENABLE LLP
Marcella Ballard
MBallard@Venable.com
Maria Sinatra
MRsinatra@Venable.com
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
Phone: 212-307-5500
Fax: 212-307-5598

                                          *Attorneys for Plaintiff BBK Tobacco &*
                                          *Foods, LLP, d.b.a. HBI International*


20438165-2