UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BBK TOBACCO & FOODS, LLP,
doing business as
HBI INTERNATIONAL,

      Plaintiff,

v.

                               Civil Case No. 20-12193
                               Honorable Linda V. Parker

MARK GIANGIULI, EBAY
SELLER JILLYCUT also known as
JILLYCUT'S JUNK; and
DAWN GIANGIULI,

      Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

On August 14, 2020, Plaintiff BBK Tobacco & Foods, LLP, doing business as HBI International ("HBI"), filed this trademark infringement and unfair competition action against Defendants Mark Giangiuli, Dawn Giangiuli, and eBay seller Jillycut, also known as Jillycut's Junk ("Jillycut"). The matter is presently before the Court on Defendants' Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer Venue, filed October 13, 2020. (ECF No. 24.) The motion has been fully briefed. (ECF Nos. 25, 27.) Finding the facts and the parties' arguments sufficiently presented in their briefs, the Court is dispensing

with oral argument with respect to Defendants' motion pursuant to Eastern District of Michigan Local Rule 7.1(f).

## I.   Factual Background

HBI is an Arizona limited liability partnership based in Phoenix, Arizona. (Compl. ¶ 11, ECF No. 1. at Pg ID 3.)  HBI owns and is the exclusive United States distributor of RAW® Rolling Papers.  (*Id*. ¶ 2, 12, Pg ID 1-3.)  It owns copyrights, trademarks, and trade dress that appear on all authentic RAW® Rolling Papers authorized for sale in the United States.  (*Id.*)

Jillycut is a Georgia company, with its principal place of business in McDonough, Georgia.  (*Id*. ¶ 13, Pg ID 4.)  HBI alleges that Jillycut sells counterfeit RAW® Rolling Papers bearing counterfeit RAW® trademarks, copyrights, and trade dress.  (*Id.* ¶ 4, Pg ID 2.)  HBI claims that these alleged counterfeit products are cheaper in price and poor-quality imitations.  (*Id.* ¶ 5, Pg ID 2.)  Jillycut's products are sold through an e-commerce eBay storefront.  (*Id.* ¶ 73, Pg ID 20.)

HBI hired LSS Consulting, Inc. ("LSS") to investigate the distribution of counterfeit RAW® products.  (Hood Decl. ¶ 6, ECF No. 8 at Pg ID 223-24.)  On four occasions between April 11, 2019 and April 2, 2020, LSS purchased Jillycut's alleged counterfeit products through its eBay storefront.  (Compl. ¶¶ 75-82, ECF No. 1 at Pg ID 20-21; Hood Decl. ¶¶ 29, 34, 39, 44, ECF No. 8 at Pg ID 227-30.)

LSS received the products at an alias address in Stamford, Connecticut.  (Hood Decl. ¶¶ 30, 35, 40, 45, ECF No. 8 at Pg ID 229-30.)  The return address on the shipping labels listed Mark A. Giangiuli at 146 Brookhaven Lane, McDonough, Georgia.  (*Id.*)  LSS then shipped the products from Stamford, Connecticut to its headquarters in Commerce Township, Michigan.  (*Id.* ¶¶ 31, 36, 41, 46, Pg ID 227-30.)

Mark Giangiuli, a Georgia resident, owns and operates Jillycut.  (*Id.* ¶ 15-16, Pg ID 4.)  Dawn Giangiuli, Mark's wife, also is a Georgia resident.  (*Id.* ¶ 19, Pg ID 4.)  HBI alleges that Dawn owns and operates Jillycut (*id.* ¶ 19, Pg ID 4); however, Dawn states that she neither owns, operates, nor is employed by Jillycut (D. Giangiuli Decl. ¶ 2, ECF No. 24 at Pg ID 553.)  According to Dawn, she has never sold rolling papers and was neither involved in nor participated in the events and/or omissions giving rise to HBI's claims in this lawsuit.  (*Id.*¶¶ 5-6, Pg ID 554.)  HBI disputes this assertion, however, pointing to two voicemail messages Dawn left for HBI's counsel after HBI submitted a takedown complaint through eBay's Verified Rights Owner ("VeRO") program concerning some of Jillycut's eBay.com listings.

As HBI's counsel explains, the VeRO program allows intellectual property owners to report listings or products to eBay that infringe upon their intellectual property rights.  (Ruisi Decl. ¶ 11, ECF No. 9 at Pg ID 283.)  If eBay finds a listing

or product to be infringing, it can remove the product listing, among other actions. (*Id.*)  HBI's counsel submitted several reports through the VeRO program concerning Jillycut's RAW product listings.  (*Id.* ¶¶ 14, 19, 32 Pg ID 284-85, 287.) eBay removed Defendants' listings in response.  (*Id.* ¶ 16, 21, 34 at Pg ID 284-85.) HBI's counsel thereafter received numerous emails, phone calls, and a text message from "Defendants" complaining about HBI and counsel.  (*Id.* ¶¶ 17-18, 22-23, 25-31, 35-42, 44-52, 54-71, Pg ID 284-296.)

The emails were all sent from Mark Giangiuli's email address and included his name in closing.  (*See* Ruisi Decl. Exs. 1-6, 8-14, 16-20, ECF No. 9-5 at Pg ID 301-313; 317-32, 336-348.)  In his communications, Mark threatened one of HBI's attorneys and called her obscenities.  (*Id.*)  All but two of the telephone calls came from Mark.[1]  (Ruisi Decl. Ex. 7, ECF No. 9-8; *see also* Ruisi Decl. ¶¶ 35-36, 45-48, 54, 56-57, 64, 66, ECF No. 9 at Pg ID 288-93, 295.)  Dawn called HBI's counsel on two occasions on July 14, 2020.  (Ruisi Decl. Ex. 7, ECF No. 9-8; *see also* Ruisi Decl. ¶¶ 51-52, 55, ECF No. 9 at Pg ID 291-92.)

At 1:29 p.m. on July 14, Dawn left the following voicemail message for HBI's counsel:

> Kristen, my name is Dawn Giangiuli.  I am from Jillycut's Junk.  Apparently you've had a bunch of my RAW listings pulled off and my husband sent you invoices and receipts and I

---

[1] The text message also came from Mark.  (Ruisi Decl. ¶ 60, ECF No. 9 at Pg ID 294

> wanna know when you are going to get the problem corrected
> or do I need to call an attorney to get it corrected.  If you could
> kindly call me back at 678-697-2947. Thank you.

(Ruisi Decl. Ex. 7, ECF No. 9-8; *see also* Resp. Br. at 7, *See* ECF No. 25 at Pg ID

567.)  In a second voicemail message left at 1:43 p.m., Dawn stated:

> Kristen this is Dawn Giangiuli from Jillycut's Junk on eBay.
> Apparently you have had a bunch of my listings pulled due to
> counterfeit and my husband sent you receipts for everything
> from the wholesaler so I would like our merchandise, for you to
> call eBay and have our listings reposted, and if you are not
> going to do that, I guess I'll be calling an attorney but you need
> to get back to me so I know what to do.  Thank you.  Bye.

(*Id*.)

In a second declaration submitted in this matter, Dawn indicates that she left

the voicemails to assist Mark and his business, and because she was concerned

about Mark who had become extremely frustrated by the refusal of HBI and its

counsel to respond to his communications.  (Dawn Giangiuli Decl. ¶¶ 8-10, ECF

No. 27-2 at Pg ID 663-64.)  Dawn explains that Mark suffers from bipolar disorder

and when he gets angry or upset, says regrettable things.  (*Id*. ¶ 10, Pg ID 663.)

Dawn again states that she neither owns, operates, nor is employed by Jillycut.  (*Id*.

¶ 3, Pg ID 662.)  She states that she has worked for Delta Airlines, full-time, for

over 27 years.  (*Id*.)

## II.    Standard of Review

Defendants bring their motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3) or, alternatively, for transfer of venue pursuant to 28 U.S.C. § 1404(a).

On a motion to dismiss for improper venue under Rule 12(b)(3), the plaintiff bears the burden of establishing that venue is proper. *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002); *Meng Huang v. Ohio State Univ.*, No. 18-12727, 2019 WL 2120968, at *2 (E.D. Mich. May 14, 2019) (noting that the Sixth Circuit has not spoken on who bears the burden of proof and relying on *Anonymous v. Kaye*, No. 95-9295, 1996 WL 734074, at *2 (2d Cir. 1996)); *see also* 14D Arthur R. Miller, Fed. Practice & Proc. § 3826 (4th ed. 2020). The court may consider facts outside the complaint but "must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Audi AG*, 204 F. Supp. 2d at 1017. The plaintiff must show that venue is "proper for each claim and as to each defendant in order for the court to retain the action." *Verbis v. Iowa Dep't of Human Servs.*, 18 F. Supp. 2d 770, 774 (W.D. Mich. 1998); *see also Cunningham v. MEC Enterprises, Inc.*, No. 10-13409, 2011 WL 1869911, at *1 (E.D. Mich. April 20, 2011) (quoting *Verbis*). Where venue in the district is improper, the court may dismiss the action or transfer it to a proper venue in "the interest of justice." 28 U.S.C. § 1406(a).

6

Even where venue is proper, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).  The moving party bears the burden of establishing the need for a change of venue. *Sullivan v. Tribley*, 602 F. Supp. 2d 795, 799 (E.D. Mich. 2009).

Courts "must evaluate both the convenience of the parties and various public-interest considerations" when ruling on a motion to transfer venue under § 1404(a). *Atl. Marine Constr. Co. v. U.S. Dist. Court of the W. Dist. of Texas*, 571 U.S. 49, 62 (2013).  As the Supreme Court summarized in *Atlantic Marine*:

> Factors relating to the parties' private interests include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.  Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." The Court must also give some weight to the plaintiffs' choice of forum.

*Id.* n.6 (internal quotation marks, citations, and brackets omitted).  "Unless the balance is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

However, "where the plaintiff does not reside in the chosen forum[,] courts assign less weight to the plaintiff's choice." *Means v. United States Conference of Catholic Bishops*, 836 F.3d 643, 651 (6th Cir. 2016). An action should not be transferred to a different forum where "the result is simply to shift the inconvenience from one party to another." *Sullivan*, 602 F. Supp. 2d at 800 (citation omitted).

## III.   Analysis

### A.   Whether Venue is Proper in the Eastern District of Michigan

Venue is governed by 28 U.S.C. § 1391(b). Section 1391(b) provides, in relevant part, that venue is proper in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred …." 28 U.S.C. § 1391(b)(1), (2). Neither Mark Giangiuli nor Dawn Giangiuli are residents of Michigan.[2] Thus, "a substantial part of the events or omissions" must have occurred in the Eastern District of Michigan for venue to be proper here.

---

[2] A natural person "reside[s] in the judicial district in which that person is domiciled." 28 U.S.C. § 1391(c)(1). Corporate defendants are deemed to reside in "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2).

In trademark infringement cases, courts have held that venue may be proper "in each jurisdiction where infringement is properly alleged to have occurred." *Nine Point Mesa of Nashville, Inc. v. Nine Point Mesa of Lexington, Inc.*, 769 F. Supp. 259, 261 (M.D. Tenn. 1991) (citing *Tefal, S.A. v. Prods. Int'l Co.*, 529 F.2d 495, 496 n.1 (3d Cir. 1976)).  "[C]ourts have found venue proper under § 1391(b)(2) in districts where confusion about the origin of the products is likely to occur because this constitutes the 'events or omissions giving rise to the claim.'" *IA Inc. v. Thermacell Tech., Inc.*, 983 F. Supp. 697, 700 (E.D. Mich. 1997) (quoting 28 U.S.C. § 1931(b)(2) and citing cases).  "'At a minimum, the defendant must have targeted its marketing and advertising efforts at the district in question, or have actually sold its products there.'" *EnviroCare Tech., LLC v. Simanovsky*, No. 11-cv-3458, 2012 WL 2001443, at *5 (E.D.N.Y. June 4, 2012) (quoting *Mattel, Inc. v. Adventure Apparel*, No. 00 CIV 4085, 2001 WL 286728 at *4 (S.D.N.Y. Mar. 22, 2001)).

HBI argues that venue is proper in the Eastern District of Michigan because Defendants sold and shipped counterfeit RAW® products there.  (Resp. at 10, ECF No. 25 at Pg ID 570.)  However, HBI's own evidence proves this assertion to be incorrect.  The only purchases HBI describes are the four controlled buys initiated by its investigator, LLS.

According to John Hood, Director of Operations at LSS, who was responsible for directing and supervising those purchases, Defendants shipped the products from Georgia to Connecticut. (Hood Decl. ¶¶ 4, 8, 30, 35, 40, 45, ECF No. 8 at Pg ID 223-24, 227-30.) The shipping labels attached to Hood's declaration reflect this, as well. (*Id*. Exs. A-D, ECF Nos 8-2 to 8-5.) It was only because *LSS* then sent the counterfeit products to its headquarters in the Eastern District of Michigan that they landed here. (Hood Decl. ¶¶ 31, 36, 41, 46, ECF No. 8 at Pg ID 227-30.) As such, this case is distinguishable from those cited by HBI, where products sold on eBay and shipped to Michigan established personal jurisdiction and venue over the defendants.[3] (Resp. at 11, ECF No. 25 at Pg ID 571 (citing cases).)

HBI also argues that Defendants' postings on eBay could be accessed and viewed by Michigan consumers. (Resp. at 10, ECF No. 25 at Pg ID 570.) But HBI alleges no facts to suggest that Defendants' eBay postings confused or deceived consumers in the Eastern District of Michigan. And HBI cites no case

---

[3] Two of the four decisions cited by HBI are default judgment orders. Order, *N. Atlantic Operating Co. v. eBay Seller Dealz_f0r-you et al.*, No. 17-10964 (E.D. Mich. 2019), ECF No. 205; Order, *N. Atlantic Operating Co. v. JingJing Jang, et al.*, No. 15-14013 (E.D. Mich. 2017), ECF No. 276. As the defendants defaulted, they waived any challenge to personal jurisdiction and venue in those cases. More importantly, a finding that venue was proper in those cases does not mean that venue (even as to the same defendants) is proper here. It only means that the defendants' alleged conduct relating to *a different plaintiff's* products gave rise to *that plaintiff's* claims here.

10

where venue was found proper based on internet postings alone, where those postings are directed nation- or world-wide as opposed to being focused on the forum.

Courts have said that "[i]n assessing the likelihood of confusion or deception in th[e] district, the [c]ourt must look to whether [the d]efendants' marketing efforts targeted the district and whether sales occurred here." *Sechel Holdings, Inc. v. Clapp*, No. 3:12-cv-00108, 2012 WL 3150087, at *3 (W.D. Ky. Aug. 2, 2012) (citing *Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000) (collecting cases)). More is required, however. The alleged harm must stem directly from conduct in or directed to the forum. *See Dedvukaj v. Maloney*, 447 F. Supp. 2d 813, 819 (E.D. Mich. 2006). "'[I]n cases involving trademark infringement and unfair competition, the wrong takes place not where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages, but where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's.'" *See Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1128 (C.D. Cal. 2009) (quoting *Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956)).

11

Thus in Lanham Act cases, courts require some (albeit sometimes "modest") sales or shipments to the district through the defendant's interactive website[4] to establish a likelihood of confusion.[5]  *See, e.g., Sechel Holdings*, 2012 WL 3150087, at *3 (citing cases).  In *Delta Sigma Theta Sorority Inc. v. Bivins*, 20 F. Supp. 3d 207 (D.D.C. 2014), the court concluded that two sales causing allegedly infringing merchandise to be shipped into the district did not constitute "even a 'modest' number of sales."  *Id.* at 216-17.  Without evidence of any advertising purposefully directed by the defendant at the forum—distinct from the defendant's generally accessible website—the court concluded that venue in the forum was improper.  *Id*. at 217.  Orders placed by a plaintiff's employees or a private investigator hired by the plaintiff are insufficient to establish "a substantial part of the events or omissions giving rise to the claim" because "these individuals were not confused by [the] defendants' products."  *Allstar Mktg.*, 666 F. Supp. 2d at 1129 n.44.  Other courts have found venue to be improper where conduct arose

---

[4] Interactive websites generally are maintained by the defendant and do not passively post information.  *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890-91 (6th Cir. 2002).  Instead, they enable consumers to  create accounts, log in and obtain information, and/or conduct business.  *Id*.; *see also Bird v. Parsons*, 289 F.3d 865, 874-75 (6th Cir. 2002).  Courts have found internet auction sites, like eBay, interactive.  *See, e.g., Dedvukaj v. Maloney*, 447 F. Supp. 2d 813, 821 (E.D. Mich. 2006); *Zen Design Group, Ltd. v. Clint*, No. 2009 WL 4050247, at *3 (E.D. Mich. Nov. 23, 2009).

[5] Even if targeted marketing alone is enough, HBI does not allege facts suggesting that Defendants purposely directed their advertising at this forum.

12

from an interactive website but no actual contact (e.g., sales) occurred. *Sechel Holdings*, 2012 WL 3150087, at *3 (citing cases).

Here, HBI identifies only Defendants' sales to LSS to establish Defendants' purposeful contacts with the venue. LSS and its investigators were not confused by Defendants' use of HBI's trademarks or trade dress. Moreover, *Defendants* did not ship the products to the Eastern District of Michigan and HBI has not established that Defendants shipped *any* alleged counterfeit RAW® products to this venue.[6] There are no allegations of any other conduct by Defendants directed at the forum. Accordingly, HBI fails to establish that "a substantial part of the events or omissions giving rise to [HBI's] claims" occurred here.[7]

_____

[6] As HBI points out (*see* Resp. at 8, ECF No. 25 at Pg ID 568), Mark Giangiuli and Jillycut have been sued in the Eastern District of Michigan for infringing the intellectual property rights associated with Zig-Zag® brand cigarette paper products. *See N. Atl. Operating Co. v. Hot Box Deals, et al.*, No. 18-cv-10134 (E.D. Mich. filed Jan. 11, 2018). But their sale and distribution of products that infringed another defendant's trademarks do not support a finding of venue in *this* case, as those activities do not give rise to *HBI's* claims.

[7] The Court is inclined to also conclude that Dawn Giangiuli has not participated in events giving rise to HBI's claims, even when drawing all reasonable inferences and resolving factual conflicts in HBI's favor. *See Allstar Mktg.*, 666 F. Supp. 2d at 1129 (citing cases holding that plaintiffs may rely on the allegations in their complaint to establish venue but only to the extent those allegations are not controverted by the defendant's evidence); *see also* Charles Alan Wright & Arthur R. Miller, 5B Fed. Prac. & Proc. § 1352 ("All well-pleaded allegations in the complaint bearing on the venue question are generally taken as true, unless contradicted by the defendant's affidavits."). The only factual allegations supporting HBI's claim that Dawn owns and operates Jillycut are her statements in her voicemails where she says that she is "from Jillycut's Junk" and refers to the listings and products as hers. Dawn's declarations contradict and explain those

13

For these reasons, the Court concludes that the Eastern District of Michigan is not a proper venue to adjudicate HBI's claims.  While a district court may, in its discretion, dismiss or transfer a matter where venue is improper, 28 U.S.C. § 1406(a), "if there is another district in which the action could have been brought, transfer is preferred to the harsh remedy of dismissal." *Kolodziej v. Gosciak*, No. 1:06-cv-820, 2008 WL 786326, at *7 (W.D. Mich. Mar. 20, 2008) (citing *Minnette v. Time-Warner*, 997 F.2d 1023, 1026-27 (2d Cir. 1993)).  The District Court for the Northern District of Georgia is a proper venue, *see* 28 U.S.C. § 1391(b)(1). The Court, therefore, is transferring the matter there.  Moreover, the relevant factors favor a change of venue to the Northern District of Georgia even if venue is proper in the Eastern District of Michigan.

First, the Court is unclear how the Eastern District of Michigan is convenient for either party.  Defendants are located in Georgia.  HBI is an Arizona limited liability partnership based in Phoenix, Arizona.  (Compl. ¶ 11, ECF No. 1 at Pg ID 3.)  For this reason, HBI's selected forum also does not weigh strongly against transferring the matter to Georgia.  *Means*, 836 F.3d at 651.

HBI already has chosen to litigate far from its home forum and any inconvenience it would suffer if compelled to litigate in Georgia seems far less

---

voicemails, however.  Notably, those voicemails themselves do not give rise to any of HBI's claims.

than the inconvenience to Defendants if the case remains in Michigan.  HBI is a

multinational corporation.  *See https://hbiinternational.com/about/*.  Jillycut, in

comparison, appears to be a one-man business operating from that individual's

home.  (*See* Compl. ¶ 13, ECF No. 1 at Pg ID 13); *https://www.google.com/maps*.

*See Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 989 (E.D.N.Y. 1991)

("[W]here a disparity between the parties exists, such as an individual plaintiff

suing a large corporation, the court may also consider the relative means of the

parties in determining whether to transfer"); *see also Tensor Group, Inc. v. All

Press Parts & Equip., Inc.*, 966 F. Supp. 727, 728-29 (N.D. Ill. 1997) (concluding

that the convenience of the parties weighed in favor of transferring a copyright

infringement action from the Northern District of Illinois to the Eastern District of

Wisconsin, because the plaintiff copyright holder was a large corporation that

would not be burdened by litigating in Wisconsin, while the alleged infringer was a

"one-man operation" that would face a great burden if forced to litigate in Illinois).

Defendants do not identify witnesses for whom Georgia would be a more

convenient forum than Michigan.  While Defendants are located in Georgia, courts

generally give less weight to the location of a parties' employees and experts when

weighing this factor.  *See William M. Yarbrough Found. v. Garcoa Labs., Inc.*, No.

1:11-cv-907, 2013 WL 4068176, at *5 (W.D. Mich. Aug. 12, 2013) (citing cases);

*see also Allstar Mktg.*, 666 F. Supp. 2d at 1132-33 (collecting cases).  HBI

identifies one witness in Michigan for whom this venue is convenient: John Hood.
Hood, like LLS, is an agent of HBI, however.  Thus, the Court must assume that
Hood will attend the trial regardless of whether it is held in this District or Georgia.
Nevertheless, Defendants do not show that the location of willing witnesses favors
Georgia.

The relative ease of access to proof does, however.  No evidence appears to
be in Michigan.  HBI is located in Arizona and Defendants and their allegedly
infringing products are in Georgia.  "[I]n infringement cases, it makes sense that
'the bulk of the relevant evidence usually comes from the accused infringer.
Consequently, the place where the defendant's documents are kept weigh in favor
of transfer to that location." *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542,
548-49 (S.D.N.Y. 2008) (quotations marks and citation omitted); *see also Republic
Tech. (NA), LLC v. BBK Tobacco & Foods, LLC*, 240 F. Supp. 3d 848, 853 (N.D.
Ill. 2016); *New Leaf Data Services, LLC v. PanXchange, Inc.*, No. 3:20-cv-00204,
2020 WL 5548857, at *7 (D. Conn. Sept. 16, 2020) (finding that this factor favored
the location of where the allegedly infringing website and reports were created and
distributed); *Griffin Capital Co. v. Essential Properties Realty Trust, Inc.*, No.
1:18-cv-4255, 2019 WL 5586547, at *6 (N.D. Ga. Jan. 18, 2019) (collecting
cases).

Defendants do not address the availability of process to compel the attendance of unwilling witnesses.  HBI argues that the Eastern District of Michigan can compel the attendance of likely relevant non-party witnesses in Michigan, which it identifies as eBay, Inc. and PayPal, Inc.  HBI provides that both entities have addresses for service of process filed with the Michigan Secretary of State in the Eastern District of Michigan.  The Court presumes, however, that eBay and PayPal maintain addresses for service of process with the Georgia Secretary of State, as well—and most likely every State given their extensive nationwide reach.  Nevertheless, Defendants do not demonstrate that this factor weighs in favor of transferring the matter to Georgia.  Nor do Defendants address and therefore demonstrate that the cost of obtaining unwilling witnesses favors a transfer of venue.

Turning to the public-interest factors, the Court is not persuaded by Defendants' claim that the Georgia courts are conducting far more business than courts in Michigan during the COVID-19 pandemic.  (*See* Mot. at 10, ECF No. 24 at Pg ID 549.)  Nevertheless, Michigan has no interest in this controversy, which involves entities in Arizona and Georgia and conduct that occurred elsewhere.  Georgia does.  As discussed above, there is no proof of a Michigan resident being confused by Defendants' alleged counterfeit products.  While a Michigan court may have more familiarity

17

with the Michigan common law and statutory unfair competition claims alleged in HBI's Complaint, a federal court in Georgia will have no difficulty understanding and applying that law.

On balance, the Court concludes that the relevant factors weigh in favor of transferring this matter to the Northern District of Georgia.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer Venue (ECF No. 24) is **GRANTED IN PART AND DENIED IN PART** in that the matter is not dismissed but shall be transferred to the District Court for the Northern District of Georgia.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: February 16, 2021

18